# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| FREDERICK P. DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:21-CV-1215 RLW |
| ) | |
| ASHLEY S. NAUCKE, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the motion of plaintiff Frederick P. Davis, an inmate at Eastern Reception, Diagnostic and Correctional Center (ERDCC), for leave to commence this civil action without prepaying fees or costs. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $13.80. For the reasons discussed below, the Court will partially dismiss the complaint, and direct the Clerk to issue process on the non-frivolous portions thereof.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The

agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $69.00. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $13.80.

**Legal Standard on Initial Review**

This Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone*

*v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even *pro se* complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff, an inmate at ERDCC, brings this action pursuant to 42 U.S.C. § 1983 against Ashley Naucke, Kimberly Bennett, John Doe Claxton and Jane Doe Rubel. The defendants are Correctional Officers at ERDCC. Plaintiff sues the defendants in their individual capacities.

Plaintiff asserts that on February 18, 2021, he approached Correctional Officer Claxton, the Correctional Officer assigned to his wing, and informed him that he needed to use the toilet but was out of toilet paper.[1] Plaintiff states that he informed defendant Claxton he suffered from hemorrhoids, which caused bleeding and a need to use additional toilet paper. Defendant Claxton directed plaintiff to ask defendant Jane Doe Rubel for the toilet paper, who was at that time assigned to the Housing Control Center.

Plaintiff alleges that he "went to the control bubble" to ask defendant Rubel for additional toilet paper. He states that both defendant Rubel and defendant Naucke were at the Housing Control Center. However, defendant Naucke was "assigned to a different wing on the other side of the housing unit."

Plaintiff states that he directed his conversation only to defendant Rubel, asking her for an additional roll of toilet paper due to his hemorrhoid condition. He claims that before defendant Rubel could respond, defendant Naucke said, "No you cannot have any extra toilet paper, now get

---

[1] Plaintiff states in his complaint that inmates are issued one toilet paper roll per week unless there "is some type of medical [issue] or other extenuating circumstances."

3

the fuck away from my bubble window." Plaintiff alleges he reminded defendant Naucke that she personally knew about his medical condition. Nonetheless, he alleges that she answered, "I don't give a fuck. Think about this the next time you want to get involve[d] in a situation between me and another offender." Defendant Naucke then stated, "Get the fuck away from my bubble and out of the sallyport before I write your ass up and have Officer Claxton lock you up." Plaintiff states that defendant Rubel told him she could not go against her friend and provide him toilet paper.

Before plaintiff could leave the sallyport, another offender asked defendant Naucke for toilet paper and she provided him two rolls of toilet paper. According to plaintiff, she looked at plaintiff and smiled while doing so.

Plaintiff states that as he was leaving the sallyport, he asked Lieutenant Bennett if he could speak to her. She agreed. They went to speak in the back office. At that time, he explained his medical condition, as well as his need for another roll of toilet paper. Defendant Bennett then issued plaintiff another roll of toilet paper. As plaintiff exited the sallyport, defendant Naucke saw the roll of toilet paper in plaintiff's hand. Plaintiff claims that defendant Naucke became "hysterical," and she began to "bang on the window of the control bubble, yelling for plaintiff to bring her the roll of toilet paper." Rather than speak to defendant Naucke, plaintiff went to his cell and used the toilet.

While plaintiff was on the toilet, defendant Naucke banged on plaintiff's cell door. Plaintiff asked defendant Naucke "what was wrong with her." He claims that defendant Naucke told him, "If you ever go over my head again to get something done when I have told you no, I will give you a fuckin conduct violation and send your fuckin ass to the hole." Plaintiff told defendant Naucke that he would report her threat to defendant Bennett. Defendant Naucke stated, "You won't talk to Lieutenant Bennett before I do you bitch ass fag and we will see whose side she takes."

4

Plaintiff states that at recreation time that day, all the cells "on the rotation were accessed but the plaintiff's door." He states that he repeatedly pressed the emergency button, and when no officer responded, he sent several inmates including wing porters to see defendant Rubel, however, she did not open his cell door.

Plaintiff claims defendant Rubel told the inmate porters the following, "I know I did not open Davis' cell door. Me and Naucke took his recreation because he wanted to be a smart ass with Naucke. We don't play that shit." Later, when his cellmate was let into his cell after returning from his work detail, plaintiff went to defendant Rubel to ask why he hadn't been let out for recreation. Plaintiff states that defendant Rubel told him almost exactly what she had told the porters. He claims that Rubel told him, "Me and Naucke took your wing recreation because you were being a smartass to Naucke. We don't play that shit and you're going to respect the fact that we run this house." Defendant Rubel then directed plaintiff to return to his cell and "lockdown." Because plaintiff felt he had not violated any rules, he refused and requested to speak with Lieutenant Bennett. Plaintiff states that Rubel directed him to wait in the sallyport and pretended to get on the phone with Bennett in the back office. However, plaintiff was able to see defendant Bennett talking with Heather Turner in the doorway of the Functional Unit Manager's Office, having a conversation.

Plaintiff alleges that Rubel hung up the phone and told him, "I told Naucke to let Lieutenant Bennett know you want to talk to her. Naucke is trippin with you because you in that situation with her and offender Johnson in your wing. Man you should have just stayed out of it." Plaintiff asserts that he told Rubel defendant Naucke was "wrong and unprofessional" both then and now. He claims that at the time, defendant Naucke had told defendant Johnson to "get off the phone and

5

lock down before she lock his black ass up." Plaintiff asserted to Rubel that her remark was "highly offensive to all of us." As a result, plaintiff told Rubel that he "just said something about it."[2]

Plaintiff claims that approximately fifteen (15) minutes after talking with defendant Rubel, defendant Naucke opened the door to the back office and told him to "step in." Defendants Naucke, Claxton, and Bennett were allegedly present in the back office. Plaintiff states that defendant Bennett asked him, "What did you say to my officer?"  Plaintiff claims he answered defendant Bennett by telling her that he did not say anything disrespectful to defendant Naucke. He states that he told defendant Bennett that "the issue was resolved and defendant Naucke had no reason to come to plaintiff['s] cell after defendant Bennett gave him the toilet paper." Plaintiff claims he explained to defendant Bennett that Naucke came to his cell, threatened to write a conduct violation on him if he ever went over her head again, and threatened him when he said he was going to speak to Bennett about Naucke's threat.

Defendant Bennett allegedly told plaintiff, "That is not what Officer Naucke said. She said she came to your cell and you called her a bitch. And you told her to get the fuck away from your cell." Plaintiff stated that defendant Bennett did not have to take his word for what was said between he and defendant Naucke as the whole wing heard her threat. Plaintiff asserted that he believed defendant Naucke was retaliating because he had told on her because of her comments to inmate Johnson, as well as going over her head to get toilet paper.[3]

---

[2]It is not immediately clear whether plaintiff filed an Informal Resolution Request (IRR) regarding his complaint, or if he simply made a verbal complaint.

[3]Plaintiff alleges in his complaint that he and a few other inmates had consistently complained about defendant Naucke's misbehavior to their Functional Unit Manager Heather Turner, as well as their House Sergeant, Sergeant Hickman, but neither individual had taken corrective action.  Plaintiff does not indicate exactly what the complaints entailed, stating only that she had misbehavior in various forms. Plaintiff does state that defendant Naucke's aunt, uncle, and mother all worked at ERDCC and her uncle was the sergeant assigned over the zone where defendant Naucke worked. Plaintiff alleges that "consequently, [defendant Naucke's] misbehavior was often ignored and covered up."

Defendant Bennett told plaintiff that she was not going to "ask another offender anything." She allegedly told plaintiff, "I'm not going against my officer. She said you did it, so you did it." At that time, she directed defendant Claxton, defendant Naucke's boyfriend, to place plaintiff in wrist restraints and take plaintiff to segregation.

Plaintiff claims that while he and defendant Claxton waited in the sallyport for clearance to move to the yard to the segregation unit, defendant Rubel yelled to plaintiff through the control bubble window, "This is what we do to offenders who go over our heads crying to our supervisors like little boys to their daddies. Have a nice trip to the hole."

Plaintiff asserts that while defendant Claxton was escorting him to segregation, he said, "You need to find your place because you know Naucke and Rubel run that house. You guys know how they are." Plaintiff purportedly asked Claxton if he agreed with defendant Naucke lying and free casing inmates. Plaintiff states that Claxton said, "I admit she is retaliating against you and she be wrong most of the time but that is my woman and I have to go home with her. Plus, she is an officer so I can't go against her for you guys." Defendant Claxton then allegedly told plaintiff that plaintiff was partly responsible for the situation by involving himself in the incident between defendant Naucke and inmate Johnson.

Plaintiff claims that after he was placed in punitive segregation, he was served with a false conduct violation report for a violation of Rule 19.1 – Action that Threatens a Custodian. The conduct violation was written by defendant Naucke. It stated:

> On the above date and approximate time, while this reporting officer was counseling Offender Davis, Frederick #500842 over an incident about toilet paper, Offender Davis, Frederick became loud and beligerent. [sic] He stated "Bitch, I don't care what you said, I still got it. Get the f[]ck away from this cell."
> By the offender's own actions, he places himself in violation of rule #19.1 Creating A Disturbance.

7

Plaintiff states that on February 24, 2020, he had a disciplinary hearing before Ben Leftridge relating to his conduct violation. He claims that Leftridge told him before the hearing began that he would not go against an officer. Plaintiff also alleges that Leftridge already had in his hand, prior to the hearing, the evidence relied on statement, the rights statement and the statement indicating that plaintiff did not request witnesses.

Plaintiff claims that in contravention to Leftridge's predetermined guilt, plaintiff had a written statement already prepared and he requested that four witnesses testify on his behalf. Leftridge allegedly rejected plaintiff's written statement on the grounds that it was too long and he didn't have time to read it, and he was releasing plaintiff anyway. Plaintiff claims Leftridge then "wrote what he wanted as plaintiff's statement."

Plaintiff verbally gave a statement at the hearing refuting the conduct violation report. He then requested review of the wing surveillance video. Plaintiff claims the request was submitted to, and denied by, Ruth Dotson, on the grounds that it belonged to the Department of Corrections.[4]

After the hearing, plaintiff was found guilty and based on defendant Naucke's statement sanctioned to six (6) days in administrative (punitive) segregation, thirty (30) days limited canteen spend and thirty (30) days no contact visits. Plaintiff has not described what the limited canteen spend entailed, or the extent of the no contact visits.

Plaintiff complains that after his release from administrative segregation, he was transferred to housing unit 5, away from housing unit 4 where defendant Naucke worked. He claims that defendant Naucke asked that plaintiff not be moved back to her unit. However, defendant Naucke was demoted to the role of utility officer at some point after plaintiff moved to

---

[4] Plaintiff claims that he requested the information from Ruth Dotson under the Missouri Sunshine Law. However, he does not provide enough information to indicate whether he submitted the request in compliance with the statute.

8

housing unit 4. Apparently, as a utility officer, defendant Naucke was expected to work at different posts across the prison as needed. In this post, plaintiff claims she worked on housing unit 5 (plaintiff's housing unit) several times after their altercation.

Plaintiff claims that on two such occasions defendant Naucke repeatedly kicked plaintiff's door to pretend he was not complying with count procedures. On another occasion, she threatened to write him up for "interfering with count." Plaintiff claims that defendant Naucke boasted of her intentions to retaliate against plaintiff to the other officers on duty, and some of the other officers intervened and threatened to report her behavior to the captain if she wrote a false conduct report.

Nonetheless, a few days later, when plaintiff returned from dinner, defendant Naucke was working in housing unit 5 and picked plaintiff out from approximately thirty (30) inmates to pat search. Plaintiff claims Naucke said at that time, "I got the (IRR) complaint you filed on me. It's a goddamn book. Are you still mad I broke up your happy home with your fag cell. You'll learn not to fuck with me." Plaintiff reported defendant Naucke's behavior at the end of the pat search, and Lieutenant Basham addressed the situation according to plaintiff.

Plaintiff states that approximately a week after that time, defendant Bennett was assigned as the Lieutenant over his zone for the day shift. She spoke to plaintiff when he brought up defendant Naucke with her. According to plaintiff Bennett told him:

> I figured Officer Naucke was retaliating or being vindictive for some reason or another because she act like a child most of the time. I knew she wasn't tell me the whole story but you guys know how I am.
>
> I don't go against my officers because I don't want to undermine their authority but I promise to keep a closer eye on her from now on.

Plaintiff alleges that both defendants Naucke and Bennett have since been terminated from the Missouri Department of Corrections.

Plaintiff seeks monetary and injunctive relief in this action.

9

**Discussion**

Plaintiff asserts that defendant Naucke unlawfully retaliated against him in violation of the First and Eighth Amendments. He also alleges that defendant Jane Doe Rubel engaged in retaliation against him in violation of the Eighth Amendment. Plaintiff additionally asserts that defendant Naucke filed a false conduct violation against him, and he claims a Fourteenth Amendment due process violation with respect to his placement in administrative segregation.

Plaintiff claims that defendants Claxton and Bennett failed to intervene to stop the unlawful retaliation in violation of the Eighth Amendment. Last, plaintiff brings a claim for defamation against defendant Naucke.

**A. Plaintiff's Retaliation Claims Against Defendants Naucke and Rubel**

Plaintiff appears to allege two types of retaliation claims against defendant Naucke. His First Amendment retaliation claim arises from his allegation that he previously reported defendant Naucke for a prior complaint relating to her treatment of another inmate in his wing. Additionally, plaintiff asserts that he is bringing an Eighth Amendment retaliation claim against defendant Naucke because she assigned him a false conduct violation as punishment for going over her head. The Court will first address plaintiff's grounds relating to his First Amendment retaliation claim.

Plaintiff asserts in his complaint that prior to February 18, 2021, he filed a complaint against defendant Naucke for her treatment of another inmate in his wing, a man named Johnson, who was using the phone and told to "lock down" by defendant Naucke. Allegedly, Naucke told inmate Johnson to "get off the phone and lock down before she lock his black ass up." Plaintiff purportedly reported Naucke's remark because he found it to be offensive and unprofessional.

Plaintiff reported to defendant Bennett that he believed defendant Naucke had denied him toilet paper because of his earlier complaint against her. Plaintiff told Bennett that Naucke made

up the false conduct violation as a result of him going over her head and getting a roll of toilet paper from Bennett.

To allege a § 1983 claim for retaliation in violation of the First Amendment, plaintiff must assert (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).  A threat alone can amount to adverse action if it is capable of deterring a person of ordinary firmness from engaging in protected activity. *Santiago,* 707 F.3d at 992-93 (internal citations omitted).

At this point in the case, plaintiff has alleged enough facts to put forth a First Amendment retaliation claim against defendant Naucke. The Court will instruct the Clerk to issue process on this claim.

Plaintiff asserts that defendant Rubel retaliated against him when, after watching the altercation between he and defendant Naucke, she took his recreation time by refusing to let him out of his cell. He alleges that Rubel told him, "Me and Naucke took your wing recreation because you were being a smartass to Naucke. We don't play that shit and you're going to respect the fact that we run this house."

Under the Eighth Amendment, a "prima facie case of retaliatory discipline requires a showing that: (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline." *Meuir v. Greene Cnty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007) (quoting *Goff v. Burton,* 7 F.3d 734, 738 (8th Cir. 1993)).  Moreover, simply alleging that an act was retaliatory is insufficient. *Id*.

11

At this point of the litigation, on § 1915 review, the Court finds that plaintiff has stated enough facts to allege retaliation claims under the Eighth Amendment against both defendants Naucke and Rubel. The Court will instruct the Clerk to issue process on these claims.

**B. Plaintiff's Failure to Intervene Claims Against Defendants Bennett and Claxton**

Plaintiff asserts that defendants Bennett and Claxton had an obligation to intervene in the alleged constitutional violations carried out by defendant Naucke. Plaintiff has not alleged any unlawful acts carried out by defendants Bennett and Claxton.

As to defendant Claxton, it appears plaintiff alleges that Claxton should have intervened in defendant Naucke's behavior due to their personal boyfriend/girlfriend relationship. Although plaintiff alleges defendant Claxton told him that he believed Naucke was retaliating against him, plaintiff also acknowledges that Claxton told him that he could not have intervened in the matter because Naucke was "an officer," and Claxton served under her. Further, plaintiff has not provided any information showing that Claxton had *direct knowledge* that Naucke was engaging in retaliation against him.

Similarly, although plaintiff alleges that Lieutenant Bennett should be liable for "failure to intervene," there are no allegations in plaintiff's complaint that defendant Bennett actually knew defendant Naucke's conduct violation against plaintiff was issued in retaliation against plaintiff. Rather, plaintiff claims that defendant Bennett spoke to him well after Naucke wrote the false conduct allegations and told him, "I figured Officer Naucke was retaliating or being vindictive for some reason or another …." This statement is not, however, an admission of actual knowledge by defendant Bennett. Instead of a claim of failure to intervene, plaintiff appears to be alleging a claim of respondeat superior against defendant Bennett. "It is well settled that respondeat superior

12

cannot be the basis of liability in a § 1983 action." *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990).

Moreover, "outside of the excessive force context, there is no clearly established law regarding a duty to intervene to prevent constitutional violations." Hess v. Ables, 714 F.3d 1048, 1052 (8th Cir. 2013) (citing Livers v. Schenck, 700 F.3d 340, 360 (8th Cir. 2012)).

Thus, plaintiff's claims for failure to intervene against defendants Claxton and Bennett are subject to dismissal.

### C. Plaintiff's Due Process Claims Under the Fourteenth Amendment

Plaintiff claims his due process rights were violated when he was given the false conduct violation by defendant Naucke and placed in the administrative (punitive) segregation unit as a result. Plaintiff states that he was denied a full and fair hearing on his conduct violation in front of Ben Leftridge and, as a result, he was given punishment of six (6) days in administrative (punitive) segregation, thirty (30) days limited canteen spend, and thirty (30) days no contact visits. Plaintiff has not described what the limited canteen spend entails or the extent of the no contact visits.

In the administrative segregation context, the determination of whether prison officials denied an inmate due process involves a two-step inquiry. *Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011). First, a plaintiff must demonstrate that he or she was deprived of life, liberty, or property by government action. *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). *See also Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012) (stating that a court "need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest"); and *Singleton v. Cecil*, 155 F.3d 983, 987 (8th Cir. 1998) (explaining that to claim a due process violation, plaintiff has to be deprived of either life, liberty, or property, otherwise "it does

13

not matter whether one has received due process or not"). Once it has been established that a liberty interest exists, the process necessary to protect that interest must be determined. *Williams*, 662 F.3d at 1000.

As life or property is not at issue in this case, plaintiff must identify a liberty interest to sustain a due process claim. *See Phillips*, 320 F.3d at 847. The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). As such, to assert a due process violation based on a liberty interest of avoiding administrative segregation, "an inmate must show that the segregation created an atypical and significant hardship on him in relation to the ordinary incidents of prison life to demonstrate that his liberty interest was curtailed." *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002).

The Eighth Circuit has stated that an assignment to disciplinary or administrative segregation is not, in and of itself, an atypical and significant hardship. *See Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (stating that Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*"); *Kennedy v. Blankenship*, 100 F.3d 640, 642 (8th Cir. 1996) (stating that plaintiff's "demotion from administrative segregation to punitive isolation is not the sort of deprivation that qualifies as atypical and significant"); and *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996) (stating that plaintiff "has no liberty interest in avoiding administrative segregation unless the conditions of his confinement present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest"). This is so even if the demotion to segregation is without cause. *Phillips*, 320 F.3d at 847.

Plaintiff asserts that he was sentenced to six (6) days total in administrative segregation. Courts have found that sentences much longer than six (6) days did not amount to atypical or significant hardship. *See Kennedy,* 100 F.3d at 641-42 (stating that plaintiff's thirty days in punitive isolation was not atypical and significant); *Orr v. Larkins*, 610 F.3d 1032, 1033-34 (8th Cir. 2010) (stating that nine months in administrative segregation did not constitute an atypical and significant hardship). *But see Williams v. Norris*, 277 Fed. Appx. 647, 648 (8th Cir. 2008) (stating that twelve years in administrative segregation confinement is an atypical and significant hardship).

Plaintiff additionally alleges that he lacked the privilege to enjoy more frequent canteen and contact visits. These restrictions do not, either individually or collectively, amount to a "dramatic departure from the basic conditions" of plaintiff's confinement under Eighth Circuit precedent. *Freitas v. Ault,* 109 F.3d 1335, 1337 (8th Cir. 1997) (stating that prisoner's "on call" status, in which he was placed in lock-up, had fewer visitors, and was not allowed phone calls, did not violate his due process rights).

Having thoroughly reviewed and liberally construed the complaint, the Court concludes plaintiff has not established he was subjected to conditions of confinement that amounted to "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin,* 515 U.S. at 485-86). Plaintiff's allegations therefore fail to state a colorable due process claim.

### D. Plaintiff's Defamation Claim Against Defendant Naucke

To the extent plaintiff is asserting that he was defamed by defendant Naucke, he has not indicated how exactly he was defamed. In other words, plaintiff has not identified a specific statement made by defendant Naucke that he believes to be slanderous.

The Court notes that an inmate cannot recover damages for defamation under 42 U.S.C. § 1983 "because a defamed person has not been deprived of any right, privilege or immunity secured to him by the Federal Constitution or laws of the United States." *Ellingburg v. Lucas*, 518 F.2d 1196, 1197 (8th Cir. 1975). Furthermore, for purposes of § 1983, name calling is not a constitutional violation. *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985). The Supreme Court has held that a person's interest in his reputation is not considered liberty or property protected by the due process clause. *Paul v. Davis*, 424 U.S. 693, 711-12 (1976). In other words, the "Supreme Court has made clear that federal courts are not to view defamatory acts as constitutional violations." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 400 (3d Cir. 2000). Thus, plaintiff could not sue defendant Naucke under § 1983 for defamation even if he had identified the allegedly slanderous statement.

To the extent he is attempting to assert a claim of defamation under Missouri state law, plaintiff would have had to identify not only the allegedly slanderous statement made by defendant Naucke, but also an additional five elements of the claim. These elements are: 1) publication of the statement, 2) that identifies the plaintiff, 3) that is false, 4) that is published with the requisite degree of fault, and 5) that damages the plaintiff's reputation. *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. 2000) (en banc). Plaintiff has failed to allege facts to establish any of the six elements of a defamation claim under Missouri law, including the requisite defamatory or slanderous statement. Accordingly, the Court finds that plaintiff's claim against defendant Naucke for defamation is subject to dismissal.

### E. Motion for Appointment of Counsel

Plaintiff has also filed a motion seeking appointment of counsel in this action. The motion will be denied at this time. In civil cases, a pro se litigant does not have a constitutional or statutory

right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim … and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018).  When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time.  Plaintiff has demonstrated that he can adequately present his claims to the Court and neither the factual nor the legal issues in this case appear to be complex.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion seeking leave to commence this action without prepaying fees or costs [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $13.80 by **May 9, 2022**.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) this case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that if plaintiff fails to pay the initial partial filing fee by **May 9, 2022**, then this case will be dismissed without prejudice.

**IT IS HEREBY ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the complaint, pursuant to the service agreement the Court maintains with the Missouri Attorney General's Office, as to defendants Ashley Naucke and Jane Doe Rubel,

Correctional Officers at Eastern Reception and Diagnostic Correctional Center, in their individual capacities. The Court will issue process on plaintiff's claims against defendant Naucke for First Amendment retaliation and Eighth Amendment retaliation. The Court will also issue process on plaintiff's claim against defendant Rubel for Eighth Amendment retaliation.

**IT IS FURTHER ORDERED** that, pursuant to 42 U.S.C. § 1997e(g)(2), defendants Ashley Naucke and Jane Doe Rubel shall reply to the complaint within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that plaintiff's claims against defendants Kimberly Bennett and John Doe Claxton are **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that plaintiff's claims for violation of his due process rights in violation of the Fourteenth Amendment for his placement in administrative segregation, failure to intervene claims in violation of the Eighth Amendment, and defamation claims under 42 U.S.C. § 1983 and under Missouri state law, are **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 3] is **DENIED at this time**.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this <u>18th</u> day of April, 2022.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**